UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

David D. Martin, Sr.,

    Plaintiff,

    v.                                            Civil Action No. 2:13-cv-56

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 10, 14)

      Plaintiff David Martin brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). Pending before the Court are Martin's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm the same (Doc. 14). For the reasons stated below, the Court GRANTS Martin's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

**Background**

      Martin was 40 years old when he filed his SSI application on December 10, 2009. He dropped out of school in the ninth grade, but completed his GED years later. The record indicates that his parents physically abused him, and he was sexually abused by a family friend when he was between the ages of seven and seventeen. In 1996, when he was eighteen years old, Martin was incarcerated for seven years for lewd and lascivious

behavior (fondling pre-teens).  Soon after his release, he was again incarcerated, this time for burglary and larceny.  He had other incarcerations, and his prison time was increased due to his violations of supervised release conditions.  In the end, he was in and out of jail for approximately 20 years, ending in late 2009.  (AR 201, 223.)

   Martin's vocational history has been mainly in the construction/labor field, although he has also worked at Price Chopper, Burger King, and the Burlington Emergency Shelter.  He has not held any job for an extended period, given his extensive incarceration.  Martin is single and has three children.  His two older children appear to have been placed in state custody soon after their births because of Martin's sex offender history.  His youngest child was one year old on the date of the administrative hearing, and Martin was seeing him once a week.  At that time, Martin was living with his fiancée.  Martin receives food stamps and welfare, and lived in a homeless shelter at times during the relevant period.

   Starting in late 2009, Martin reported severe back and neck pain with decreased range of motion, tenderness, and spasm.  MRI testing, x-rays, and a bone scan revealed stenosis of the lumbar spine with disc herniation and moderate degenerative disc narrowing, among other findings.  (AR 309, 314.)  Epidural injections have not relieved Martin's pain, and his treating providers have recommended surgery.  According to Martin, his pain causes significant limitations in his ability to stand, walk, twist, and lift; and he is unable to straighten his back completely.  (AR 39, 186–93, 216–23.)  He needs help taking a shower, is unable to stand long enough to prepare his own meals, and is able to lift and carry only approximately five pounds.  (AR 39–41.)  He also has mental

impairments, and multiple providers have diagnosed him with posttraumatic stress disorder, depression, anxiety, and borderline intellectual functioning. (*See, e.g.*, AR 41, 455, 496, 566.)

On December 10, 2009, Martin protectively filed an application for SSI, alleging disability due to back problems.[1] (AR 81, 140, 177–78.) Later, he updated his application to assert that he has "lots of pain in [his] neck and shoulder on [the] right"; he "cannot lift [his] arm above [his] head"; and he has problems sleeping because of the pain. (AR 224.) His application was denied initially and on reconsideration. In November 2011, Administrative Law Judge ("ALJ") Dory Sutker held a hearing on Martin's application. (AR 28–67.) Martin appeared and testified, and was represented by counsel. Soon thereafter, the ALJ issued a decision finding that Martin was not disabled under the Social Security Act since the date he filed his application. (AR 12–22.) The Appeals Council denied Martin's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–4.) Having exhausted his administrative remedies, Martin filed the Complaint in this action on April 12, 2013. (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

---

[1] Although there is some ambiguity regarding Martin's alleged disability onset date (*see, e.g.*, AR 12, 21–22, 140, 178), Martin states in his Motion that the "relevant onset date" is the date of his SSI application, December 10, 2009 (Doc. 10-1 at 4). The Court thus treats that date as the alleged onset date.

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Martin had not engaged in substantial gainful activity since the application date of December 10, 2009.  (AR 14.)  At step two, the ALJ found that Martin had the following severe impairments: degenerative disc disease of the lumbar and cervical portions of the spine with spinal stenosis, anxiety disorder, depression, and borderline intellectual functioning.  (*Id.*)  Conversely, the ALJ found that Martin's asthma was not severe.  (AR 15.)  At step three, the ALJ determined that none of Martin's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 15–17.)  Next, the ALJ determined that Martin had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Martin] cannot climb ladders, ropes[,] or scaffolds.  He can occasional[ly] climb ramps and stairs and can occasionally stoop.  He can frequently balance, kneel[,] crouch[,] and crawl.  After sitting for one hour, he needs to stand for about [two] minutes.  He can perform uncomplicated tasks in an environment that requires only superficial interaction with co[]workers and the public.  He can collaborate with supervisors on routine issues.

(AR 17.)  The ALJ found that Martin had no past relevant work.  (AR 20.)  Nonetheless, given his RFC, the ALJ found that Martin was capable of performing other jobs existing in significant numbers in the national economy, including mail sorter, marker, assembler, order clerk, addresser, and document preparer.  (AR 20–21.)  The ALJ concluded that Martin had not been under a disability since December 10, 2009.  (AR 21–22.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

5

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Martin claims the ALJ erred in her analysis of the opinions of treating physician Dr. Olubusola Gomes and non-examining agency consultant Dr. Geoffrey Knisely. For the reasons explained below, the Court agrees and finds that the matter should be remanded to the Commissioner for a reevaluation of these opinions. Martin also claims the ALJ's RFC determination is not supported by substantial evidence. The Court does not decide this issue because the RFC determination was necessarily affected by the ALJ's analysis of the opinions of Dr. Gomes and Dr. Knisely, and should be determined anew on remand after the ALJ has reassessed these opinions.

**I.   ALJ's Analysis of Treating Physician Dr. Gomes's Opinions**

In September 2010, Dr. Gomes began treating Martin for chronic back pain as well as neck and shoulder pain. (AR 678.) Based on his review of Martin's January 2010 MRI, Dr. Gomes found evidence of "disc degeneration at L1-L3, disc herniation at L3-L4, disc degeneration at I4-I5[,] and severe left foraminal narrowing." (*Id.*) Approximately nine months later, in June 2011 Dr. Gomes opined in a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" ("MSS") that Martin could never lift any weight, only occasionally carry up to ten pounds, sit and stand for only one hour at a time, stand for two hours in an eight-hour day, walk for three hours in an eight-hour day, and sit for eight hours in an eight-hour day. (AR 776–77.) Dr. Gomes further opined that Martin could never reach with his right hand and only occasionally reach with his left hand, and could never climb ladders or scaffolds, stoop, kneel, and crawl. (AR 778–79.) Dr. Gomes concluded that Martin's physical impairments would

cause him to be absent from work "about 4 days per month." (AR 781.) The ALJ afforded "some, but only limited weight" to these opinions. (AR 20.)

Under the treating physician rule, a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well []supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). When a treating physician's opinion is not given controlling weight, the ALJ must consider the regulatory factors in determining how much weight is appropriate, *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw*, 221 F.3d at 134), and must "give good reasons" for the weight afforded to that opinion, *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted).

The ALJ defends her decision to afford "limited weight" to Dr. Gomes's opinions by stating that these opinions are "[are] not well supported and [are] inconsistent with other substantial evidence." (AR 20.) This statement is not supported by substantial evidence, and thus does not constitute a "good reason" to afford limited weight to Dr. Gomes's opinions. In fact, objective testing supports Dr. Gomes's opinions regarding Martin's physical limitations. (*See, e.g.*, AR 271, 309–10, 314, 642–45, 748–60.) Dr. Gomes discussed some of this objective testing in his MSS, stating that an MRI of Martin's cervical spine (neck) reveals "multiple spondylosis, disc herniations, narrow spinal canal, [and] neuroform stenosis," while an MRI of Martin's lumbar spine (lower back) reveals "narrow spinal canal, disc degeneration, [and] disc bulge." (AR 776.) Dr.

8

Gomes also mentioned several significant clinical findings in his MSS, stating: "physical findings include tenderness in cervical spine and decreased range of motion," "muscle weakness" in the right upper extremity, "tenderness" in the lower spine, and "nerve impairment" in the legs.  (*Id.*)

The Court finds that Dr. Gomes's opinions are well supported by objective medical evidence and consistent with his own treatment notes as well as those of other treating providers, including treating orthopedic specialists Dr. Martin Krag and Dr. Warren Rinehart.  For example, in January 2010 treatment notes, Dr. Rinehart stated: "lumbar spine x-rays today show[] moderate degenerative disk narrowing in the upper half of the lumbar spine" (AR 271); and "MRI shows a small [spinal] canal . . . on a congenital basis with marked spinal stenosis at L4-5 particularly on the left neural foraminal area" (AR 318).  Dr. Rinehart added: "I discussed with Dr. Krag about [Martin's] MRI.  We both agree for him to have transforaminal epidural injections."[2]  (AR 320.)  In October 2010, after reviewing the relevant x-rays and MRI, Dr. Krag recorded: "[d]isk degeneration at C4-5, C5-6, C6-7. . . .  The foraminal stenosis is most at the right C6-7 foramen, which certainly could be causing some C7 nerve root impingement, which is compatible with the posterolateral upper arm pain."  (AR 754.)  In a November 2010 treatment note, Dr. Gomes noted spinous process and muscular tenderness in the neck, decreased range of motion in the neck, bony tenderness and pain in the cervical back, right upper extremity flexor/extensor weakness, and a weak right

---

[2] In January 2010, Dr. Rinehart signed a form stating that Martin was unable to work for an unknown period.  (AR 322.)  Dr. Gomes signed a similar form in November 2010.  (AR 747.)

shoulder shrug.  (AR 712, 722.)  Dr. Gomes made similar findings in December 2010, and stated that Dr. Krag planned to try "cervical steroid injection with [a] contingency plan including spinal surgery."  (AR 676.)  Dr. Gomes continued: "[Martin] will continue to consider [surgery,] given the severity of his disease, as steroid injection[s] may not significantly improve his symptoms/functionality."  (*Id.*)

One of the reasons the ALJ provides in support of her decision to afford limited weight to Dr. Gomes's opinions is that "Dr. Krag[, who specializes in spinal disease,] did not provide a statement supporting [Martin's] application for benefits."  (AR 20.)  First, this is not a "good reason" to afford only limited weight to a treating physician's opinion. As pointed out by Martin, there is no law stating that an ALJ may use the absence of an opinion from one treating physician as a good reason to find the opinions of another treating physician less valuable.  Second, as noted above, Dr. Krag's treatment notes are consistent with Dr. Gomes's opinions, and the ALJ's opinion fails to acknowledge relevant information from Dr. Krag's treatment notes.  For example, the ALJ states that Dr. Krag noted in March 2010 that "[Martin's] pain was 'relatively minor,'" (AR 18 (quoting AR 394)); but in fact, Dr. Krag stated that Martin's pain was "relatively minor *at this point*" (AR 394 (emphasis added)).  The ALJ also neglects to acknowledge that, in the same treatment note, Dr. Krag recommended that Martin "[c]ontinue on temporary total disability status," an unlikely recommendation if Dr. Krag did not believe Martin's back problems were significant.  (*Id.*)  Dr. Krag stated in the same March 2010 treatment note that, if Martin did not achieve sufficient relief "over the next few weeks," and if his symptoms "continue[d to be] sufficiently severe that he would want to have surgical

10

treatment," a preoperative appointment "for a left L4-5 far lateral disk herniation excision" would be scheduled. (*Id.*) And in a later treatment note, Dr. Krag stated that if steroid injections did not provide relief, then he would order a CT bone scan of the cervical spine, and then follow up with Martin "to see if there are significant areas of localized uptake, other than at the C6-7 level, to help decide if symptoms were sufficiently severe to indicate C7 radiculopathy, [and] whether a fusion [surgery] should involve other levels as well." (AR 754.) Again, it is unlikely Dr. Krag would have contemplated surgery if he did not believe Martin's back pain was severe.

Citing to a November 2010 treatment note, the Commissioner asserts that "surgery was considered an option [merely] in the context of Mr. Martin's failure to comply with physical therapy." (Doc. 14 at 11 (citing AR 682).) The record does not support this argument. Rather, a fair reading of the cited treatment note (although somewhat ambiguous) reflects that Martin "did not demonstrate good follow through with his initial home [physical therapy] program" due to "a high level of pain" and an ability to tolerate only "low[-]level exercises." (AR 682.) Considering the remainder of the record as a whole, it appears that surgery was considered an option because of the severity of Martin's degenerative disc disease and other back problems, not because of his failure to comply with physical therapy. (*See, e.g.*, AR 753–54.)

The ALJ further defends her decision to afford limited weight to Dr. Gomes's opinions by stating that Martin reported to a social worker that he could walk and ride a bicycle, told a treating psychologist that he could sit at a computer for a significant period of time, and was described by a treating occupational therapist as being able to

11

independently perform activities of daily living. (AR 19 (citing AR 401, 491, 494).) But these providers also included many limitations in their treatment notes, stating for example: "difficulty walking and lifting," "overall motivation and prognosis is poor" (AR 401–02), "[r]eports difficulty getting out of bed," "fiancée helps him pull up his pants and put his shirt on," "fiancée dries him off [after showers] where he can't reach," "fiancée is getting things out of the cabinets for him [and] does the cooking and laundry" (AR 491–92), and "[d]ue to his pain, he has been unable to work, he has difficulty with [activities of daily living], most notably dressing, and he is unable to do most household chores" (AR 494). Despite the ALJ's notation that Martin told a social worker he could ride a bicycle in July 2010 (AR 19 (citing AR 401)), an August 2010 note from occupational therapist Linda Sheridan states that, although Martin "[l]ikes to bicycle," he "reports he can't because of pain" (AR 492). Similarly, an August 2010 treatment note from psychologist Joann Joy states that "[Martin is] unable to engage in previously enjoyable recreational activities that include bicycling [and] swimming, and he is only able to walk for short periods." (AR 494.)

      There are other significant factual errors in the ALJ's analysis of Dr. Gomes's opinions. Citing to Dr. Gomes's MSS, the ALJ states: "Dr. Gomes described [Martin] as able to carry 10 pounds." (AR 18 (citing AR 773–81).) But in fact, the MSS prepared by Dr. Gomes states the opposite, that Martin could "[n]ever" lift "[u]p to 10 [pounds]." (AR 776.) The ALJ also states that a November 2009 treatment note recorded that Martin "acknowledged that his symptoms ha[d] begun only one week earlier despite his current assertion that he has been disabled since October 1, 2009." (AR 18 (citing AR

12

288).)  In fact, that treatment note states that the onset of Martin's back pain occurred *three months* earlier, i.e., in approximately August 2009.  (AR 287.)  Citing the same treatment note, the ALJ states that Martin "maintained normal gait, balance[,] and motor function," and "was able to squat and . . . had only mild symptoms with straight leg testing."  (AR 18 (citing AR 250); *see also* AR 288.)  The ALJ neglects to mention that the note also states: Martin "looks uncomfortable, [and is] moving slowly"; his spine "is positive for posterior tenderness"; he has a "diminished [left] patellar reflex compared to right"; and he "[is] able to walk on toes (barely)."  (AR 250; *see also* AR 288.)

       The ALJ also states that a treatment note from Dr. Gomes indicates that Martin had "'no localized weakness'" and "'intact'" strength (AR 18 (citing AR 753)), without acknowledging that the same note also indicates: Martin "describes a generalized weakness, involving both the proximal strength and also grip strength"; "MRI scan shows some cervical pathology"; and "[s]eated exam shows moderately reduced neck range of motion in all directions" (AR 753).  Likewise, the ALJ cites a treatment note from Dr. Dan Collins, stating that Martin "maintained normal strength and reflex function" and that Dr. Collins "considered [Martin's symptoms] to be consistent only with muscle strain."  (AR 19 (citing AR 759–60).)  But Dr. Collins also stated in that treatment note: "Mr. Martin is [having] obvious back pain and ambulating is difficult"; "his back is notable for point tenderness in the paraspinous muscles in the lower portion of his back"; and "straight leg lift is inhibited by pain bilaterally."  (AR 759.)  Dr. Collins also noted that Martin was having an "acute episode of lower back pain," and opined that, although

13

the episode was "most consistent with muscle strain," there were "[o]ther possibilities," including "a radiculopathy." (AR 760.)

For these reasons, the Court finds that the ALJ erred in her analysis of Dr. Gomes's opinions.

## II.  ALJ's Analysis of Agency Consultant Dr. Knisely's Opinions

The Court also finds that the ALJ erred in her analysis of agency consultant Dr. Knisely's opinions. Although the ALJ did not discuss Dr. Knisely's opinions in particular, she gave the "[g]reatest weight" to the opinions of the agency reviewing physicians, including Dr. Knisely and Dr. William Farrell, stating that they are consistent with the evidence. (AR 20.) The ALJ neglects to note, however, that, despite her decision to afford the greatest weight to Dr. Knisely's opinions and only limited weight to Dr. Gomes's opinions, a significant part of Dr. Knisely's opinions—that Martin was able to walk for only three-to-four hours in a day and had no sitting limitations (AR 481)—is consistent with Dr. Gomes's opinion that Martin was able to walk for three hours and sit for eight hours in a workday (AR 777). The ALJ also fails to recognize that Dr. Knisely's opinions are internally inconsistent on the same, significant point: he checked a box indicating that Martin could stand/walk for "about 6 hours in an 8-hour workday" while also writing that Martin could stand/walk for only "3-4" hours. (*See* AR 475, 481.) Of these two opinions, arguably, the opinion that Martin could stand/walk for three-to-four hours is more valuable, given that it is part of a narrative with supporting explanation (AR 481), as opposed to the opinion that Martin could stand/walk for six hours which is merely in the form of a checked box (AR 475). In any event, considering

14

the ALJ's decision to afford more weight to Dr. Knisely's opinions than to those of any other medical provider, she should have considered and attempted to resolve this inconsistency.

Finally, the ALJ should have given less weight to Dr. Knisely's opinions because they were made in August 2010, before significant medical evidence was added to the record. Specifically, Dr. Knisely prepared his report before the following evidence was added to the file: a September 2010 MRI which revealed multilevel cervical spondylosis, congenitally small cervical spinal canal, neuroforaminal stenosis bilaterally, and central disc herniations (AR 734); Dr. Krag's October 2010 interpretation of the September 2010 MRI and opinion that fusion surgery was an option if other treatment was ineffective (AR 754); a March 2011 bone scan revealing facet arthropathy and costovertebral arthrosis (AR 749); and Dr. Gomes's June 2011 MSS opining that Martin could stand for only two hours and walk for only three hours in an eight-hour day and would be absent from work for approximately four days each month (777, 781). Generally, where there are conflicting opinions between treating and consulting sources, the "consulting physician's opinions or report should be given limited weight." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). This is particularly true where, as here, the consulting source did not examine the claimant and made their opinions without considering all the relevant medical information. *See Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); *Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011) (medical consultant's

assessment deemed incomplete where it was unclear whether he reviewed all of the evidence, including in particular "the evaluation, radiographic, and diagnostic notes of . . . an orthopedist who diagnosed [claimant] with severe degenerative arthritis of the left knee and found her to be a candidate for total knee arthoplasty") (internal quotation marks omitted).

## Conclusion

For these reasons, the Court GRANTS Martin's motion (Doc. 10), DENIES the Commissioner's motion (Doc. 14), and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 19th day of February, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge